IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**ORDERUP LLC,**

    Plaintiff

    v.                                   CIVIL NO. JKB-14-620

**MIZZMENUS, LLC,** *et al.*,

    Defendants

## MEMORANDUM AND PRELIMINARY INJUNCTION

*I. Background*

Pending before the Court is Plaintiff's motion for temporary restraining order ("TRO") and preliminary injunction. (ECF No. 2.) The Court previously held a hearing and granted the motion in part as to a TRO. (ECF Nos. 8, 9.) After an additional hearing on March 13, 2014, with both parties and their respective counsel present, the Court now GRANTS the motion for preliminary injunction as to some of the requested relief and DENIES it as to other requested relief.

Incorporated into this Memorandum and Preliminary Injunction are the background and factual allegations from the Court's prior order. The Court will repeat here only those facts necessary to explain its ruling.

Plaintiff OrderUp LLC has sought injunctive relief against Defendants MizzMenus, LLC, Corey Rimmel, and Ryan T. Rich. The individual defendants are the members of MizzMenus, LLC. A portion of OrderUp's request was earlier conceded by Defendants and was the basis for the TRO enjoining Defendants from using or disclosing the Customer Data, which, by the

parties' agreement, was and remains the property of OrderUp. That will be carried forward into the preliminary injunction.

Beyond that, OrderUp has also asked the Court to enforce a covenant not to compete in the licensure agreement. Briefly, OrderUp develops, markets, and provides a proprietary online food ordering platform to local entrepreneurs in cities across the United States. (Compl. ¶ 11, ECF No. 1.) Under the agreement, OrderUp provided MizzMenus, the licensee, with a technical platform supporting the licensee's web site in Columbia, Missouri, access to OrderUp's call center that handles questions from restaurants and customers, management of participating restaurants' menus, and processing for orders paid by credit card. (*Id.* ¶ 16, 19-21.) OrderUp also provided MizzMenus with guidance and suggestions regarding sales and marketing best practices and techniques, pricing structures, and promotional deals. (*Id.* ¶ 17.) The agreement was signed January 5, 2011, and by its terms and later agreement of the parties, the agreement was set to expire April 6, 2014. (*Id.* ¶¶ 24, 36.) Instead, MizzMenus abruptly gave notice on February 26, 2014, that it was rescinding the agreement. (Compl. ¶ 38.) None of the preceding allegations were contested at the hearing by Defendants.

OrderUp premises its remaining request for injunctive relief upon the following provision:

> During the Term of this Agreement and for a period of two (2) years (provided that if such period is determined by a court of competent jurisdiction to be unenforceable, then the longest enforceable period of time shall be deemed to replace such two (2) year period) thereafter, Licensee agrees not to manage, invest in, work for, consult with or otherwise provide services to any entity or business that offers any product or service that competes with the Service in the Territory.

(Section 11.4, Licensure Agreement, Compl. Ex. 1.)

At the hearing on March 13, OrderUp argued that Defendants have contracted with a competing business to provide the same service once provided by OrderUp. This, in OrderUp's

view, constitutes either "working for" a competitor or "otherwise providing services to" a competitor.

The Court notes that the licensure agreement, as explained at the hearing, contemplated that MizzMenus was to be the public face of the local business and that OrderUp was to provide technical, marketing, and administrative support to MizzMenus. As OrderUp's chief executive officer, Chris Jeffrey, testified, the role of MizzMenus was customer acquisition and signing up restaurants to participate in the online ordering business. In Defendants' parlance, MizzMenus was running the "front end" operation and OrderUp was running the "back end" operation, at least in Columbia, Missouri. OrderUp has also developed its own public face through eponymous franchises in various localities across the country, and since the rupture between it and MizzMenus, OrderUp has started one such franchise in Columbia. The Court notes that OrderUp's Columbia franchise has exclusive access to the Customer Data generated during the term of the licensure agreement between the parties. At the hearing, Jeffrey testified that from January 2013 to January 2014, MizzMenus processed 56,000 transactions in the Columbia territory using OrderUp's platform.

Corey Rimmel, one of the two members of MizzMenus, LLC, testified that, while MizzMenus was a licensee of OrderUp, MizzMenus had an agreement with a business called Mr. Delivery to perform the task of physical delivery of the food from a restaurant to a customer, where the restaurant did not have its own delivery service. Since February 26, 2014, Rimmel said that MizzMenus has used Mr. Delivery as a temporary, basic, order-taking and -processing operation, but that the technology was not much better than simply calling the restaurant on the telephone and directly placing the order. Jeffrey also testified that MizzMenus does not now have the same ability to provide online ordering as it had with the OrderUp platform before the

parties went their separate ways. Rimmel acknowledged at the hearing that from February 26 to date, MizzMenus had processed less than a hundred transactions. At the hearing, OrderUp introduced some evidence indicating that Rimmel was an owner of MrDelivery.com (Mar. 13, 2014, Hrg. Ex. 15, 16)—presumably meaning the Columbia franchise but perhaps meaning the company as a whole—and that such a franchise

> offers a turn key business with a full call and dispatch center which handles all the data entry, logistic routing, software, and telephone calls of the business allowing the entrepreneur to focus on marketing and sales instead of the headaches of logistics.

(*Id.* Ex. 13.) This same description is reflected on the portion of the MizzMenus.com web site pertaining to "franchise opportunities." (*Id.* Ex. 14.)

OrderUp also introduced an affidavit from Jamie Canine, who is the new OrderUp franchisee in Columbia, indicating that OrderUp had posted on the Internet that it was seeking a marketing manager in Columbia; Canine became aware of the posting on January 24, 2014 (*Id.* Ex. 15), which the Court observes is prior to February 26, when MizzMenus notified OrderUp it was rescinding the agreement. This raises an inferential question of whether OrderUp was intending to compete with its licensee, MizzMenus, in Columbia.

Finally, the licensure agreement was between OrderUp LLC and MizzMenus, LLC, not between individuals who are owners of their respective LLCs.

## II. *Standard for Preliminary Injunctive Relief*

In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court set forth the following standard for preliminary injunctive relief:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

4

*Id.* at 20. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. Courts are called upon to balance a plaintiff's claims of injury against the burdens to be imposed upon the defendant, and they must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24.

## III. Analysis

### A. Likelihood of Success on the Merits

Plaintiff has failed to establish, at this point, a likelihood of success on the merits of the issue of whether OrderUp is entitled to enforcement against MizzMenus of the covenant not to compete. The language of the agreement remains ambiguous in relation to what OrderUp says the covenant's purpose was. At the hearing, Jeffrey testified OrderUp included the provision in the licensure agreement because it wanted to protect OrderUp's potential for brand equity under a new web site address, or uniform record locator ("URL"). It is not clear at this stage of the proceedings that the purpose can be accomplished by the covenant. It seems more likely that OrderUp is contending that MizzMenus was barred from using a competitor to OrderUp. But again, the language of the covenant is ambiguous as to whether it can be construed to include merely using or contracting with an alternative service provider.[1] Furthermore, even if the covenant can be construed in the manner OrderUp seeks, it is open to question as to whether the members of MizzMenus, LLC, are personally bound by it. Finally, questions remain as to whether Mr. Delivery is truly a competitor to OrderUp, although the evidence at this stage favors

---

[1] OrderUp contends it "worked for" MizzMenus and that MizzMenus "worked for" OrderUp, within the meaning of the covenant not to compete. No evidence before the Court shows that MizzMenus understood the phrase "work for" to possess this rather unusual definition.

Plaintiff. Thus, it is possible that Plaintiff will prevail, but as of now, the evidence is no greater than in equipoise.

### B. Likelihood of Irreparable Harm

OrderUp has failed to establish the likelihood of irreparable harm if the Court does not enjoin MizzMenus from using another service provider. OrderUp, as earlier noted, is in exclusive possession of the Customer Data, and MizzMenus is barred from using it. MizzMenus has had minimal web site traffic since February 26, 2014. In contrast, OrderUp has displayed aggressive marketing ability by emailing those in the Customer Data announcing OrderUp's new online food ordering business in Columbia, accusing MizzMenus of cheating on OrderUp, and offering a $5 coupon off a customer's next order. (Defs.' Opp'n Ex. C, ECF No. 19.) No irreparable harm to OrderUp can be found.

### C. Balance of Equities

As the Court stated at the end of the hearing, MizzMenus has already substantially lost its previous business and is now teetering on the verge of extinction. An injunction that prevents MizzMenus from using an alternative service provider would likely have cataclysmic consequences for it. Even without an injunction, OrderUp would likely continue to grow. The balance of equities favors MizzMenus.

### D. Public Interest

The Court's statement in the TRO as to the public's interest in having contractual obligations upheld remains valid. However, without the other three factors being in Plaintiff's favor, this factor alone cannot be the basis for preliminary injunctive relief.

Accordingly, it is hereby ORDERED:

1. Plaintiff's motion for preliminary injunctive relief is GRANTED IN PART and DENIED IN PART.

2. Defendants are ENJOINED from disclosing or using, directly or indirectly, in any manner Customer Data generated during the Term of the license agreement. Defendants are further ENJOINED from knowingly marketing to anyone in the Customer Data.

3. Plaintiff is not required to give security.

DATED this 14th day of March, 2014.

BY THE COURT:

/s/
James K. Bredar
United States District Judge